# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN W. CARTWRIGHT, | )<br>) |
| Plaintiff, | ) Civil Action No. 2:12-cv-01502<br>) Judge Mark R. Hornak |
| v. | )<br>) |
| FIDELITY BANK, et al., | )<br>) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

This case, filed in this Court on October 17, 2012, involves claims brought by Plaintiff Karen Cartwright ("Ms. Cartwright") under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and under Pennsylvania common law for conversion, against Fidelity Bank ("Fidelity"), her former employer, and several Fidelity executives ("Defendants"). Fidelity has since become part of WesBanco, Inc. pursuant to a merger agreement ("WesBanco"). ECF No. 27 at 2-3. Defendants filed a Motion to Compel Arbitration, which the Court, after a hearing, granted under the terms of Ms. Cartwright's employment contract with Fidelity. ECF No. 24 at 99-116. From February 24, 2014 to February 26, 2014, the parties presented their cases at a three-day arbitration hearing before a three-person Financial Industry Regulatory Authority ("FINRA") panel. On March 10, 2014, the arbitration panel issued a final award to Ms. Cartwright in the amount of $10,096.79 for breach of contract and dismissed all of her other claims with prejudice.

Ms. Cartwright has now filed a Motion to vacate the arbitration award, alleging that the arbitrators committed misconduct, imperfectly executed their powers, and manifestly disregarded

the law. ECF No. 26. In response, WesBanco has filed a Motion to confirm the arbitration award and for attorney's fees as a sanction for what it claims is a baseless attempt by Plaintiff to reopen the arbitration panel's final and binding decision. ECF No. 31. After reviewing the papers and hearing argument on the Motions, the Court will deny Ms. Cartwright's Motion and grant WesBanco's Motion to the extent that it confirms the award handed down by the arbitration panel.

Vacation of an arbitration award is "an extraordinary remedy." *Tate Orchards v. Rain and Hail, LLC*, 2013 WL 1833713, at *3 (M.D. Pa. May 1, 2013). Section 10(a) of the Federal Arbitration Act ("FAA")[1] identifies the limited circumstances under which a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

When reviewing arbitration awards, "courts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987). It is not enough to show that the arbitrator committed an error – "even a serious error." *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Absent an allegation of dishonesty,

---

[1] The parties agree that the FAA applies in this case.

"improvident, even silly, factfinding" does not provide a basis to vacate an award. *Misco*, 484 U.S. at 39. "It is irrelevant whether the courts agree with the arbitrator's application and interpretation of the agreement." *Arco-Polymers, Inc. v. Local 8-74*, 671 F.2d 752, 755 (3d Cir. 1982) (per curiam). As long as an arbitrator's decision can in any rational way be derived from the language and context of the agreement, it must not be disturbed. *See Roberts & Schaefer Co. v. Local 1846, United Mine Workers*, 812 F.2d 883, 885 (3d Cir. 1987). "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispenses[s] his own brand of industrial justice' that his decision may be unenforceable." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

Ms. Cartwright advances a number of theories as to why the Court should award her the exceptional relief she seeks.[2] She first contends that the arbitration panel engaged in misconduct warranting vacatur under Section 10(a)(3) when it considered (and denied) her motion for leave to file FINRA Rule 2010 sanctions only at the conclusion of her case, rather than postponing the hearing, after receiving notice from Shelly Todd ("Ms. Todd"), her attorney at the time,[3] that she had received "thousands of documents" from Defendants pursuant to a motion to compel only days prior to the hearing. That argument contains several fatal flaws. The first paragraph of Ms. Cartwright's own motion for leave concludes with the following sentence: "Claimant request[s] leave to file a Motion for Sanctions *at the conclusion of Claimant's presentation of evidence* in support of Claims brought before this panel at the Evidentiary Hearing beginning on February

---

[2] In her brief, Ms. Cartwright argued that the arbitration panel imperfectly executed its powers by incorrectly dismissing her claim for violation of FINRA Rule 2232 "by agreement of the parties." *See* ECF No. 33-10 at 3. At oral argument, counsel for Ms. Cartwright conceded that she had in fact agreed to dismiss the claim. The Court will therefore not address that argument.

[3] Ms. Todd has since passed away.

3

24, 2014" (emphasis added). ECF No. 33-15 at 2. Additionally, the sanctions requested by the Plaintiff in that motion equate to a default judgment in excess of $5 million in compensatory damages – a continuance of the hearing is not requested anywhere. *Id.* at 6.

Finally, at the hearing, when opposing counsel suggested that Ms. Todd may have "some doubt in [her mind] as to whether she had a chance to fully evaluate" the documents she had received, Ms. Todd responded: "There is but not a serious doubt, because I had other than just myself. I was blessed with a paralegal and other counsel, and we went through all those documents." ECF No. 33-5 at 10. Ms. Todd did not request a continuance at that time either. Because Plaintiff specifically requested that her motion be taken up at the conclusion of her case and never asked for the hearing to be postponed despite multiple opportunities to do so, the Court cannot conclude that the arbitration panel committed any misconduct or prejudiced her rights in proceeding with the hearing as scheduled and considering her motion after she presented her evidence.

Ms. Cartwright also contends that the arbitration panel's award was based on a committed manifest disregard of the law. Although not explicitly listed in Section 10(a), courts created a ground for vacating an arbitration award where the panel's decision "evidence[s] a manifest disregard for the law rather than an erroneous interpretation of the law." *Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 534 (3d Cir. 1985). Then came *Hall St. Assocs., LLC v. Matel*, 552 U.S. 576, 584 (2008), where the Supreme Court held that Section 10(a)'s enumerated grounds for vacatur were exclusive. Since then, the Supreme Court and our Court of Appeals have declined to enter the current Circuit-split fray as to whether the manifest disregard standard is viable post-*Hall St. See Bellantuono v. ICAP Sec. USA, LLC*, 557 F. App'x 168, 173-74 (3d Cir. Jan. 30, 2014). Following the Third Circuit's

4

pragmatic approach in *Bellantuono*, the Court believes it appropriate to consider Ms. Cartwright's arguments in the context of the "manifest disregard" doctrine.[4]

An arbitration panel commits a manifest disregard of law when it acknowledges and then disregards an explicit, well-settled, and clearly applicable rule in making its decision. *Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 177 (3d Cir. Aug. 2, 2010). Courts have also vacated awards where an arbitration panel manifestly disregarded the agreement providing the basis for the award. *See News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union Local 103*, 921 F.2d 40, 41 (3d Cir. 1990). Essentially, the movant must show that the arbitration panel refused to apply a plainly controlling rule of law. *Bellantuono*, 557 F. App'x at 174.

Ms. Cartwright argues that the arbitration panel manifestly disregarded the law by dismissing her Title VII retaliation arbitration claim in the face of evidence that Fidelity terminated her because she filed this lawsuit (which contains among others, a Title VII compensation claim). "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008). As to the required causal connection, the Supreme Court recently held that "a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013).

---

[4] The Second, Fourth and Ninth Circuits have held that the "manifest disregard" test survived *Hall Street*. The Fifth, Eighth and Eleventh have held that it did not. 557 Fed. App'x. at 173, n.3.

5

Plaintiff's primary basis for alleging that Fidelity fired her for suing it under Title VII (the activity protected by Title VII) is this tidbit of hearing testimony from Defendant Richard Spencer ("Mr. Spencer"), President and CEO of Fidelity:

> Q: At some point in time Karen Cartwright was terminated. Correct?
>
> A: Yes.
>
> Q: Do you know who made the decision to terminate her?
>
> A: I did.
>
> Q: What led to you make that decision [sic]?
>
> A: The primary reason was her filing the suit in the middle of October that tried to enjoin the merger.

ECF No. 33-5 at 11. But that is not all Mr. Spencer had to the say on the subject of Ms. Cartwright's termination:

> That was a clear breach of her contract and that, along with her unwillingness to help with the merger activities, caused me to make that decision.

*Id.*

> Q: Now, you said that Ms. Cartwright attempted to enjoin the merger. Isn't it true, Mr. Spencer, she just merely attempted to enjoin the transfer of the client book…the claim, was it an injunction of the merger of the bank or the transfer of the book?
>
> A: She was trying to gain possessory interest in a bank asset.
>
> Q: So you would concede –
>
> A: No, I wouldn't concede anything. She was trying to take possession of a possessory – of a bank asset which was in clear violation of her contract.[5]

*Id.* at 12.

---

[5] Neither the original Complaint, nor the First Amended Complaint, contained a Title VII retaliation claim. Each did seek millions of dollars in damages for allegedly unpaid compensation and each specifically sought to enjoin the transfer of Ms. Cartwright's client accounts during the merger. Ms. Cartwright's Title VII retaliation claim appeared in her Amended Statement of Claims within the FINRA Arbitration. ECF No. 28-9 at 9.

A portion of Ms. Cartwright's Fidelity employment agreement reads as follows:

> Employee covenants and agrees to treat as confidential and not to disclose and to use only for the advancement of the interest of Employer all information, plans, records, trade secrets, business secrets, and confidential or other data of Employer, submitted to Employee or compiled, received, or otherwise discovered by Employee from time to time in the course of his or her employment by Employer for use in Employer's business, which Employee knows to have been acquired by him or her in confidence or which Employee knows would not otherwise be available to competitors of Employer or to members of the public and which would not otherwise become known to said competitors or members of the public. For purposes hereof, "trade secrets" shall mean any information concerning any matters relating to the affairs or business of Employer, including . . . the names or addresses of any of Employer's customers, or information concerning such Employer customers' accounts or portfolios . . .

ECF No. 33-4 at 6. Ms. Cartwright says the but-for cause of her termination was the filing of her Complaint in this case, which alleged a cause of action under Title VII. Mr. Spencer's testimony, which Ms. Cartwright says substantiates that, indicates that he believed she had breached a term of her employment contract by laying legal claim to her client list, and seeking to enjoin its transfer in the merger and that is why he fired her. In this regard, it is worth noting that when Ms. Cartwright filed her request for a Temporary Restraining Order in this Court on November 16, 2012, she sought to enjoin the Defendants "from any and all pre and post merger activities that imply or assert [a Fidelity] possessory interest in the securities customer assets currently managed by Plaintiff." ECF No. 5 at 1. Fidelity terminated her employment on November 27, 2012. ECF No. 27 at 3.

The arbitration panel had before it the precise issue Ms. Cartwright focuses on here – was her assertion of a Title VII claim the "but for" cause of her dismissal? It is apparent from the testimony and record facts that the arbitration panel could have rationally concluded that Fidelity fired Ms. Cartwright for reasons other than her assertion of a Title VII claim, namely her other claims, and her effort to gum up the merger by enjoining the transfer of accounts which she said

7

were worth millions. In short, there was evidence presented and arguments advanced which would have supported Ms. Cartwright's position, or not. The fact that there was a Title VII claim in the lawsuit certainly would demonstrate that Ms. Cartwright engaged in protected conduct. But that does not mean that the assertion of that particular claim (among many) was a "but for" cause of her dismissal. The panel weighed the evidence and ruled. Neither the applicable legal standards nor the evidentiary record compels the result Ms. Cartwright sought at arbitration, and now seeks here.[6] In the absence of misconduct, an arbitration award may only be vacated in an extreme situation where the award is so irrational that there is "absolutely no support at all in the record justifying the arbitrator's determinations." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 295 (3d Cir. 2010) (internal quotation omitted). As the record demonstrates, that is not the case with the arbitration panel's dismissal of Ms. Cartwright's Title VII retaliation claim. There was sufficient evidence presented from which the arbitration could conclude that Ms. Cartwright's Title VII claim was not the "but for" cause of her dismissal, but that her efforts to stop the transfer of assets was.

Ms. Cartwright also contends that the arbitration panel committed a manifest disregard of law by awarding her damages on her breach of contract claim but dismissing her fraud claim. The arbitration panel characterized its breach of contract award to Ms. Cartwright as "unpaid stock distribution." ECF No. 28-15 at 4. Ms. Cartwright's fraud claim was grounded on a September 12, 2013 letter from WesBanco to Ms. Cartwright, assuring her that she had already received her total stock option distribution, and her 2012 federal W-2 income tax form, which

---

[6] Plaintiff argues that a concession by WesBanco that she was fired because she filed this lawsuit is conclusive proof that she was retaliated against for asserting Title VII rights. Not so. This lawsuit had a number of claims, including one for the injunctive relief noted. Filing a lawsuit is not definitionally Title VII–protected conduct *per se*; filing a good faith Title VII claim is. It was for the arbitrators to decide whether the assertions of the also-included Title VII claim was a "but for" cause of her termination. They had a record basis to conclude either that it was, or was not. Thus, there is no basis to conclude that the arbitration award was in manifest disregard of the law.

8

included the distribution of the stock options in her income from Fidelity for 2011. *See* ECF Nos. 28-16, 28-17. Ms. Cartwright claims that due to WesBanco's representations that she had received that distribution, there is no way the arbitration panel could have rationally awarded her the amount of the distribution and not found that WesBanco committed fraud.

In Pennsylvania, the "gist of the action" doctrine "operates to preclude a plaintiff from recasting ordinary breach of contract claims into tort claims . . . . a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contract, and not by the larger social policies embodies by the law of torts." *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581-82 (Pa. Super. Ct. 2003). "Where fraud claims are intertwined with breach of contract claims and the duties allegedly breached are created and grounded in the contract itself, the gist of the action is breach of contract." *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (quoting *Griffith*, 834 A.2d at 583-84). Claims of fraud in the performance of a contract are therefore generally barred under the gist of the action doctrine. *Id.*

Here, the arbitration panel could have rationally concluded that Ms. Cartwright's claim of fraud was integrally related to her breach of contract claim. Ms. Cartwright's own argument – that the arbitration panel had to find WesBanco liable for fraud if it found WesBanco liable for breach of contract due to unpaid stock distribution, because both claims were based on the same set of facts – logically concedes that. The arbitration panel could have determined that WesBanco's duty to pay her arose solely from the contract between her and WesBanco. If that was the case, Ms. Cartwright's fraud claim essentially duplicated her breach of contract claim, and its success was completely dependent on the terms of her contract. Because there was a proper basis for the arbitration panel to find that Ms. Cartwright's fraud claim was barred by the

9

gist of the action doctrine, and to award her damages solely on her breach of contract claim, the Court concludes that the panel did not commit manifest disregard of law in that respect.

Because Ms. Cartwright has not met her very substantial burden to demonstrate one of the limited grounds for vacating an arbitration award, the Court will deny her Motion and grant WesBanco's Motion to confirm the award. Defendants also move for sanctions against Ms. Cartwright pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

> A party seeking an award of attorney's fees under § 1927 bears a heavy burden. "Courts should exercise [discretion to award § 1927 sanctions] only in instances of a serious and studied disregard for the orderly process of justice." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). The Third Circuit has held that "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 142 (3d Cir. 2009). The attorney's conduct "must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Baker Indus. Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985).

*Benson v. Giant Food Stores, LLC*, 2011 WL 6747421, at *3 (E.D. Pa. Dec. 22, 2011). Defendants contend that Ms. Cartwright acted in bad faith because she had no real legal basis for filing her Motion, challenged determinations made by the arbitration panel that she had previously agreed to, and supported her Motion by mischaracterizing and misrepresenting the record.

While Ms. Cartwright's arguments do not carry the day, the Court finds no bad faith on her lawyers' part that would give rise to an award of attorneys' fees under Section 1927. Particularly in light of the untimely passing of Ms. Todd, the lawyer who previously represented Ms. Cartwright in this Court and before the arbitration panel, and the entry of new counsel into

10

this case to argue the Motions currently before the Court, the fact that some of Ms. Cartwright's arguments are contradicted by her previous counsel's actions at the arbitration hearing stage does not necessarily indicate willful misconduct. Further, the Court heard oral argument on the Motions from Ms. Cartwright's lawyer, and found such argument to be reasoned and helpful to the Court's understanding of the dispute. Based on that, the Court pegs her counsel's conduct as far closer to well-intentioned zeal than bad faith. *Cf. DigiTelCom, Ltd. v. Tele2 Sverige AB*, 2012 WL 3065345, at *7 (S.D.N.Y. July 25, 2012) (granting a motion for Section 1927 sanctions where plaintiff's attorney filed a motion to vacate an arbitration award and selectively quoted the agreement in question, repeatedly characterized disputed facts as "undisputed" and "essentially stipulated," cited no specific principle or rule of law that the arbitral tribunal allegedly ignored, and claimed that the tribunal was biased without providing any supporting facts). While at the end of the day Ms. Cartwright's position here did not hold water, the record does not demonstrate that her lawyer's advocacy was either baseless or pointless. The Court will therefore deny Defendants' Motion for sanctions.

An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: September 24, 2014

cc: All counsel of record

11